[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action brought by plaintiff husband against the defendant wife on October 12, 1999, for dissolution of their marriage on the ground of irretrievable breakdown. On October 28, 1999, the defendant wife filed an answer admitting all allegations of the plaintiff's amended complaint dated October 21, 1999, and a cross-complaint seeking dissolution on the same ground. On May 6, 2002, the Plaintiff withdrew his complaint and filed an answer to the cross-complaint admitting all allegations of the cross-complaint.
The parties were married on August 18, 1971, in Beirut, Lebanon. The parties have two children issue of the marriage: Daniel M. Chahine, born February 2, 1984, and Andrei, born April 8, 1981.[1]
The court observed the demeanor of the witnesses at trial, reviewed transcripts introduced of prior testimony of the plaintiff and others, reviewed and considered the exhibits, sworn financial affidavits, claims for relief, proposed findings of facts and orders, and trial memoranda.
Based upon the evidence, the court makes the following findings. This action was commenced on October 12, 1999. The court has jurisdiction and all statutory stays have expired. The marriage has irretrievably broken down and judgment may enter dissolving the marriage on this ground.
The defendant wife is 56 years old and in relatively good health with no medical condition preventing her from working. The plaintiff husband is 52 years old. At the time the parties were married, the defendant had CT Page 8485 a Bachelor of Arts degree obtained in 1967, from the University of Puerto Rico. She worked in a number of situations and positions while, and after, the plaintiff was in the process of completing work towards his undergraduate and graduate degrees. Her last full-time position was as a customer service representative for American Express. Thereafter, from 1994 through 1998, she worked part-time at a preschool in Westport.
During the term of their marriage, primarily to further the plaintiff's employment opportunities, the parties moved some 14 times, living in Amsterdam, Milwaukee, Chicago, and for six years in Saudi Arabia. The time in Saudi Arabia was extremely difficult and trying for the defendant. Because of that country's laws and culture, she was not permitted to drive or work and it was often necessary for her to remain locked in their apartment.
After residing in Colorado and Illinois from 1986 until 1991, the parties relocated to Connecticut. In 1998, a position change required that the plaintiff relocate to Geneva, Switzerland. To avoid disruption of their children's educational program, and with the plaintiff's agreement, the defendant and her two children, ages 17 and 14, remained in Connecticut. The defendant visited her husband but continued in her role as housewife and mother, taking care of all obligations and responsibilities associated with the Westport home and property. The plaintiff devoted his time, energy, and efforts to his career.
At the time the parties were married, the defendant wife had no assets of significant value.[2] The defendant lives in a home in Westport, Connecticut which was purchased for $460,000, in both names in 1994 with the down payment of 10% paid from money earned by the plaintiff. In 1996 and 1997, major improvements were started, some of which have still not been completed. The current fair market value of this home is approximately $975,000. The balance on the outstanding mortgage is approximately $543,000. The parties are also joint owners of a time-share in Dorado, Puerto Rico with a value of approximately $25,000. This was purchased with funds provided by the defendant wife's parents.
The parties received a federal tax refund for 1998 in the amount of $23,027.34. The plaintiff, without permission, endorsed the defendant's name and used the funds for his own purposes. In 2000, he received and retained $60,000 in bonus payments, and as an offset Judge Cutsumpas, on April 14, 2000, awarded the defendant wife sole and exclusive use of the parties' Fidelity Investment Portfolio. To date, she has not been able to access this account. In addition, Attorney Ganim is holding, in escrow, $37,052 of 1999 bonus payments.
It would serve no useful purpose to recount all of the allegations, CT Page 8486 charges and evidence as to cause of breakdown of this marriage. The plaintiff husband's lack of faithfulness to the defendant and his lack of commitment to the marriage, however, were the primary causes for the breakdown.
The plaintiff has had an extraordinary career in the securities field. The extended history of his achievements and success make clear that his income and earnings will continue to grow. In 1998, he earned some $560,000, in 1999 $620,000, in 2000 $819,000 and in 2001 $1,328,000. For the period of June 1, 2000 through December 2001, he had an employment agreement with Credit Suisse First Boston with a guaranteed minimum monthly salary of $83,333, and the opportunity to increase this amount dependant upon his gross production. Although his contract provided for certain charge backs if the plaintiff's production did not meet expectations, he never failed to meet his quota. To increase production, at the end of 2001, the plaintiff and two others formed a sales team/partnership, and in April of 2002 they added another partner. Historically, the major portion of the plaintiff's annual earnings have been generated in the latter half of each calendar year and no credible evidence was produced to indicate that this pattern would change. The plaintiff's testimony as to his past and current earnings, earning capacity, and as to his assets was and is entitled to no weight as the information he provided in financial affidavits, discovery responses and testimony was intentionally false, fraudulent, incomplete and misleading.
The court has carefully considered the statutory criteria and applicable case law in reaching the decision reflected in the orders that follow:
 1. The marriage of the parties having broken down irretrievably is hereby dissolved.
 2. Periodic Alimony — the husband, during his lifetime, shall pay to wife, until her death or remarriage, the sum of $30,000 per month as periodic alimony. The alimony shall be payable on the first day of each month in advance. Said alimony shall be secured by wage execution.
3. Support — the husband shall pay to the wife the sum of $2,500 per month as child support for Daniel until he completes twelfth grade or attains the age of 19, whichever comes first. This amount exceeds the minimum presumptive guideline amount of $383 per week. This amount is appropriate CT Page 8487 considering the earnings of the plaintiff, and it would be inequitable and inappropriate to award the minimum under the circumstances of this case. Said support shall be payable on the first day of each month in advance and shall be secured by wage execution.
 4. Life Insurance — The life insurance policies with Northwest Mutual and CIGNA in the face amount of $1,250,000 shall be transferred to the wife who shall own the same free and clear of any claim by the husband. The husband shall timely pay all premiums on said policies and maintain and continue the same in good standing for so long as he has an obligation to pay alimony. The husband shall also name the wife as beneficiary of his life insurance with his employer, CFSB, for so long as he has an obligation to pay alimony.
5. Property Division —
 A. 27 Edgemarth Hill Road, Westport, CT: The husband's interest in the marital residence located at 27 Edgemarth Hill Road, Westport, CT is hereby assigned to the defendant wife. Pursuant to General Statutes § 46b-81 (a), the court orders that the assignment of the plaintiff husband's interest in said real property shall pass to the defendant wife by virtue of this judgment without any further act of the plaintiff husband and the defendant wife shall record this judgement upon the land records of the Town of Westport to effectuate this transfer. The defendant wife shall hereafter own said premises free of any claim by the plaintiff husband and the defendant wife shall indemnify and hold the husband harmless with respect to the mortgage presently existing on the premises.
B. The husband's interest and all rights in and to the time-share in Puerto Rico shall be transferred to and shall be property of the defendant wife, free of any claim by the plaintiff husband. She shall indemnify and hold the husband harmless from any liabilities concerning the property. Transfer shall be by CT Page 8488 judicial conveyance. The court shall retain jurisdiction to effectuate the provisions of this paragraph.
 C. The Credit Suisse First Boston Retirement Account, which includes the rollover amount of the husband's Citibank Citibuilder 401(k), shall be equally divided by the parties. The husband's 50% interest shall be subject to an injunction as security for and shall be held by the wife until such time as the husband makes all payments owed to the wife for the alimony pendente lite arrearage as found by this court and for and until any other lump sum property or alimony orders, or counsel fee orders in the dissolution judgment are paid by the husband in full. The parties shall execute a Qualified Domestic Relations Order, if appropriate, to effectuate this provision and shall share equally the cost of preparation.
 D. The parties' joint Citibank Account (99234666) in the United States shall be transferred to the wife. Citibank account #5998261732 shall remain the property of the wife and account #52557898 shall remain the property of the husband.
 E. The Donaldson, Lufkin Jenrette Private Partners Equity Fund shall be transferred to and owned by the plaintiff husband.
 F. The J.P. Morgan Capital Accumulation Program and Stock Options/Deferred Compensation shall be divided equally. In the event that these assets are not permitted to be transferred to the wife, the court shall retain jurisdiction to effectuate this provision.
 G. The Donaldson, Lufkin Jenrette Retirement Savings Plan shall be divided equally. In the event transfer of this to the wife is not permitted, the court shall retain jurisdiction to effectuate this provision.
H. The wife shall be entitled to the Fidelity Investment Portfolio and the Fidelity Mutual CT Page 8489 Fund, and Fidelity Accounts: X57-161683, X08-083380 and T054091683, all free and clear of any claim by the husband. Husband shall execute any documents required to effectuate the transfer.
 I. The wife shall be entitled to the escrow account being held by Attorney Ganim. Said funds shall be transferred to the wife immediately upon the entering of the judgment of dissolution.
 J. The husband shall be entitled to his bank accounts, shown to be solely in his name on his May 4, 2002 Financial Affidavit, free and clear of any claim by the wife.
 K. Motor Vehicles — the wife shall retain the 2000 Volvo S70 and shall be fully responsible for and indemnify and hold plaintiff harmless from and for all costs of maintaining said vehicle. The husband shall retain the 1999 Audi A6 and hold the wife harmless for all lease payments and costs of maintaining said vehicle.
L. Jewelry — each of the parties shall retain their jewelry.
 M. Other personal Property — wife shall retain all personal property presently located at the marital residence, including but not limited to furniture, furnishings and artwork. Husband shall retain all personal property presently located at his residence in London, England.
N. Custodial Accounts
 The parties shall turn over to the children all custodial accounts that are held by the parties, either jointly or individually, for the benefit of the children, including, but are not limited to, the following accounts:
 a. Citibank UTMA Account #12193976561 for Daniel Chahine, which the husband is named as custodian;
b. Fidelity UTMA Account #157-303550 for Andrei CT Page 8490 Chahine, on which the husband is named as custodian, and
 c. Fidelity UTA Account #157-303607 for Daniel Chahine, on which the husband is named as custodian.
 6. Liabilities — Except as otherwise be provided herein, the husband and wife shall be responsible for the liabilities on their respective financial affidavits, and shall indemnify and hold the other harmless therefrom.
 7. Counsel Fees — The court will reserve jurisdiction on the issue of counsel fees until a hearing on this issue is completed and a decision rendered.
 8. Medical Insurance — The wife shall have the right, at her expense, to the continuation of coverage under medical and hospitalization insurance under the husband's health insurance plan, if said plan so permits, and upon a decree dissolving the parties' marriage, to exercise whatever rights of conversion that she may have with respect thereto under "COBRA" or otherwise. The husband shall cooperate with the wife to aid her in processing any documents or papers which may be required in order for the wife to continue said coverage, if available, or to convert said plan to herself, provided any expense with respect thereto shall be the sole responsibility of the wife.
 9. Taxes — The husband shall indemnify, hold harmless and defend the wife with respect to any and all tax liabilities, deficiencies, interests and/or penalties resulting from the parties joint income tax returns.
 10. Appeal — None of the orders entered in the dissolution action shall be stayed in the even the plaintiff and/or defendant files an appeal.
 11. Restoration of Birth Name — The wife's birth name of Helen Martinez shall be restored.
HILLER, JUDGE. CT Page 8491